**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **BESSEMER SYSTEM FEDERAL CREDIT UNION**, on behalf of itself and all others similarly situated,<br><br>   Plaintiff,<br><br>     v.<br><br>**TRUSTAGE FINANCIAL GROUP, INC.,**<br><br>   Defendant. | Case No. |

## CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Bessemer System Federal Credit Union ("Bessemer FCU" or "Plaintiff") brings this Class Action Complaint on behalf of itself, and all others similarly situated, against Defendant TruStage Financial Group, Inc. ("TruStage" or the "Company"), alleging as follows:

### I. SUMMARY OF THE ACTION

1. Plaintiff brings this class action against TruStage for failure to properly secure and safeguard Plaintiff's and other similarly situated credit unions and credit union members' private and confidential information ("Class Members").

2. Financial service and insurance providers—such as TruStage—are acutely aware of the critical importance of cybersecurity this digitally interconnected world. Indeed, defendant TruStage provides business and operational insurance for credit unions (including cybersecurity and risk management products), lending protection products (such as GAP for auto loans), employee benefit investment account platforms, and consumer insurance, and provides Cybersecurity Protection to credit unions across the country through its Business Protections Solutions Suite of products. Plaintiff Bessemer FCU and Class Members entrusted TruStage with highly sensitive and protected confidential information ranging from personal details to financial

records, including those of Plaintiff's members.

3. Plaintiff Bessemer FCU is a federally chartered, not-for-profit credit union. TruStage sold a variety of services to Bessimar FCU to be a trusted custodian of Plaintiff's members' confidential information ("Confidential Information"). It was required to and did, like other Class Members, provide Defendant with Confidential Information.

4. In addition, TruStage's own privacy policy ("Privacy Policy") appearing on its website further represents that its "policies and procedures are designed to protect personal information about [its customers]," that they "safeguard nonpublic personal information in accordance with applicable state and federal regulations," and that TruStage "maintains physical, technological and administrative safeguards to protect [its customers] personal information and prevent unauthorized or accidental use, access, or loss."[1]

5. Despite employing its own cybersecurity products and services, the security practices implemented across TruStage's systems were inadequate. The Company maintained insufficient safeguards to protect the Confidential Information of Plaintiff and Class Members. Even so, TruStage continued to market and sell its inadequate services to Plaintiff.

6. These deficiencies were not hypothetical. On July 15, 2026, TruStage announced that it was suffering from a cybersecurity incident ("Cyber Vulnerability Incident" or the "Data Breach"). On information and belief, unauthorized third parties accessed TruStage's systems. Reports from credit unions indicate that the incident has caused operational disruptions. The affected services include, among others:

- Customer access to certain TruStage systems and support channels

---

[1] *Privacy Policy*, TruStage, (last updated June 4, 2026) https://www.trustage.com/legal/privacy, (last accessed July 16, 2026).

- Guaranteed Asset Protection (GAP) claims

- Mechanical Repair Coverage Claims

- Payment Protection products.

7. Upon information and belief, TruStage did not take reasonable or industry-standard measures to remediate this known vulnerability, permitting attackers to gain access to its systems and resulting in the Cyber Vulnerability Incident.

8. Here, despite the highly sensitive nature of the Confidential Information entrusted to them, TruStage failed to implement and maintain adequate industry-standard cybersecurity safeguards sufficient to protect Plaintiff's members' Confidential Information. Plaintiff and Class Members cannot remediate these security deficiencies on its own because TruStage controls the systems that store and process Plaintiffs' and Class Members' Confidential Information. As a result, TruStage's systems remain inadequately secured, exposing Plaintiffs' and Class Members' members to ongoing risks including identity theft, account-takeover fraud, and other forms of misuse.

9. Plaintiff and Class Members bring this action to recover payments made for deficient services and to recoup any and all expenses incurred as a result of the Data Breach by Plaintiffs and Class Members.

## II.    PARTIES

10. Plaintiff Bessemer System Federal Credit Union is a federally chartered, not-for-profit credit union with its principal place of business located at 106 Woodfield Drive, Greenville, Pennsylvania 16125. Bessemer FCU was founded by the employees of the Bessemer and Lake Erie Railroad in Greenville, Pennsylvania.  In 2005, it expanded to become a community credit union.

11.     Defendant TruStage Financial Group, Inc. is an Iowa corporation with its principal place of business located at 5910 Mineral Point Road, Madison, Wisconsin 53705. TruStage provides insurance, lending, and financial services products to credit unions and their members throughout the United States. TruStage's registered agent for service of process is C.T. Corporation System, located at 400 E. Court Avenue, Suite 110, Des Moines, Iowa 50309, and is a citizen of the States of Wisconsin and Iowa.

### III.    JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) this action is a class action, which contains class allegations and expressly seeks certification of a propose class, (2) the citizenship of Plaintiff is different from the citizenship of Defendant TruStage, and (3) the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendant TruStage because Defendant's principal place of business is in this district. Defendant also conducts business in this district and has purposefully availed themselves of this forum state.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant TruStage's principal place of business is in this District and therefore TruStage resides in this District pursuant to 28 U.S.C. § 1391 (c)(2). Venue is further proper in this District under § 1391 (b)(2) because a substantial part of the events giving rise to Plaintiff's claims also occurred in this District.

### IV.    FACTUAL ALLEGATIONS

15.     On or around July 15, 2026, Defendant TruStage announced that its systems had been

breached. As a result, TruStage launched an investigation into the Cyber Vulnerability Incident. The Company shut down its network to contain the breach.

16.     As of July 15, 2026, at 11:15 am CT, the Company informed its customers that they may experience difficulty accessing account information, completing transactions, or submitting requests online.

17.     Since that time, Class Members have had limited or no access to their TruStage accounts, including employee retirement accounts such as 401(k) plans. Normal business operations with TruStage have come to a halt.

18.     TruStage's publicly available Privacy Policy contains representations regarding the security measures it maintains to protect customer data.[2]

19.     In TruStage's 2025 Security Practices which are part of its Due Diligence center package for credit unions, the Company states that it takes the information-security risk posture very seriously and protects corporate information and business applications through administrative, physical, and technical safeguards.  TruStage further represents that all production data is backed up on a regular, automated schedule, that errors are monitored, and that recovery testing occurs at least annually.  It further states that its tests confirm that critical business processes can be recovered timely and that the relevant platforms and communications function as intended.

20.     The Company's representations were intended to be relied upon by credit unions—including Plaintiff—in deciding whether to enter into and continue long-term contractual relationships with TruStage.

---

[2] *Privacy Policy*, TruStage, (last updated June 4, 2026), https://www.trustage.com/legal/privacy, (last accessed July 16, 2026).

21.     One or more of the Company's security representations were not accurate when made. TruStage failed to implement and maintain commercially reasonable and appropriate safeguards sufficient to protect Plaintiff's members' Confidential Information from unauthorized access by criminal third parties.

22.     TruStage made these representations without exercising reasonable care to ensure their accuracy. Given the Company's role as a third-party service provider to regulated credit unions and the known risks associated with credential-based and third-party attacks, it knew or should have known that its security controls were inadequate to meet the standards it represented.

23.     Plaintiff and Class Members reasonably relied on TrueStage's security representations at contract formation and throughout the Parties' relationship when deciding to transmit their members' Confidential Information to TruStage and to continue performing under their agreements.

24.     The Company's inaccurate and incomplete security representations harmed Plaintiff and Class Members in a direct and foreseeable manner by depriving Plaintiff of material information that would have affected its assessment of risk, vendor oversight, and continued use of TruStage's services. By failing to exercise reasonable care to ensure that its security representations accurately reflected the safeguards actually in place, the Company caused Plaintiff and Class Members to continue transmitting sensitive data and paying for services it reasonably believed were secure and compliant with contractual and legal requirements.

25.     The Company's failure to exercise reasonable care in implementing cybersecurity measures is particularly significant given its position within the credit union ecosystem. As a third-party service provider entrusted with sensitive financial data, TruStage was required to implement security controls commensurate with the heightened risks associated with servicing regulated

credit unions.

26.     As a direct result of TruStage's security failures, Plaintiff and Class Members have incurred and will continue to incur significant expenses to safeguard members, monitor and remediate fraud, investigate suspicious activity, and address the long-term identity-theft risks created by the Company's misconduct.

27.     The Confidential Information from Plaintiff's and Class Member's members was entrusted to the Company. Once compromised, Confidential Information can be exploited to cause a wide range of financial harms, including unauthorized account access, fraudulent transactions, circumvention of fraud controls, and impersonation of members across multiple systems.

28.     The harm does not cease with the initial incident. Once exposed, members' information may circulate indefinitely—including on illicit marketplaces—creating continuing risks of identity theft, account takeover, and downstream fraud long after the original exposure. The stolen data may also be used to cause non-monetary harms, including harassment, extortion attempts, and targeted stalking.

29.     Industry research further confirms that breaches involving third-party vendors are increasingly common and impose substantial financial burdens on affected organizations. For example, the Verizon Data Breach Investigations Report reports that approximately 30% of all data breaches involve third parties—nearly double the proportion reported the year prior—reflecting the growing risks created by organizations' reliance on external service providers and interconnected systems.[3]

---

[3] Sarah Hemmersbach, *Third-Party Data Breaches: What You Need to Know*, Mitratech (Dec. 30, 2025) https://mitratech.com/resource-hub/blog/third-party-data-breaches/ (last accessed Apr. 5, 2026).

30.    Third-party breaches are also among the most costly incidents organizations face. The IBM Cost of a Data Breach Report estimates that the global average cost of a breach approaches $4.9 million and identifies third-party involvement as one of the most common initial attack vectors. The report further explains that breaches involving third-party vendors tend to increase breach costs by approximately 5% above the global average.[4]

31.    Beyond these financial harms, third-party breaches also commonly result in significant operational disruption. Industry reporting explains that third-party service providers often underpin critical aspects of organization's operations, and that breaches affecting such providers can cause substantial downtime and business interruption for their customers, even where the breach originates in the vendor's environment rather than the affected organization's own systems.[5]

## CLASS ACTION ALLEGATIONS

32.    Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

33.    Plaintiff brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of itself and a Class consisting of:

> All credit unions (including credit union members) in the United States who provided Confidential Information to TruStage and were impacted by the Data Breach (the "Class").

34.    Excluded from the Class is TruStage, any entity in which TruStage has a controlling

---

[4] *Cost of a Data Breach Report 2025: The AI Oversight Gap*, Baker Donelson (Aug. 22, 2025), https://www.bakerdonelson.com/webfiles/Publications/20250822_Cost-of-a-Data-Breach-Report-2025.pdf. (last accessed Apr. 5, 2026).

[5] *2025 Data Breach Investigations Report*, Verizon (May 5, 2025), https://www.verizon.com/business/resources/T9c1/reports/2025-dbir-data-breach-investigations-report.pdf. (last accessed Apr. 5, 2026).

interest; any affiliate, parent, or subsidiary of TruStage; any officer, director, employee, or legal representative of TruStage; any governmental entity; any judge, justice, or judicial officer to whom this case is assigned, including his or her spouse.

35.     Plaintiff reserves the right to amend the definition of the Class.

36.     This action is properly maintainable as a class action.

37.     The Class consists of potentially thousands of members and, at least more than forty (40) making joinder of all Class members as individual plaintiffs impracticable.

38.     Common questions of law and fact exist as to all members of the Class and predominate any questions solely affecting individual members of the Class. Among questions of law and fact common to the Class are:

    a.  Whether Defendant had a duty to protect the Confidential Information of Plaintiff and Class Members;

    b.  Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' Confidential Information;

    c.  Whether Defendant breached its duties relating to the collection and storage of Plaintiff's and Class Members' Confidential Information;

    d.  Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct; and

    e.  Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

39.     Plaintiff's claims are typical of the claims of each member of the Class in that Plaintiff alleges common conduct by TruStage aimed at and/or affecting each member of the Class. Specifically, TruStage's liability and the fact of damages are common to Plaintiff and each member

of the Class. Plaintiff and the other Class members seek identical remedies under identical legal theories. There is no material factual variation between Plaintiff's claims and those of the Class.

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel who have extensive experience prosecuting class actions and who, with Plaintiff, are fully capable of, and intent upon, vigorously pursuing this action. Plaintiff has no interest adverse to the Class.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Furthermore, it would be impracticable for all members of the Class to redress the wrongs done to them individually and there will be no difficulty in the management of this action as a class action.

42.     The prosecution of separate actions against TruStage would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for TruStage. In addition, adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of the interests of the other members of the Class not parties to such adjudications or could substantially impede or impair their ability to protect their interests.

## CLAIM FOR RELIEF

### COUNT I
**Negligence**
**(On Behalf of Plaintiff and the Class)**

43.     Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

44.     TruStage provides services to credit unions, including cybersecurity insurance, to protect Class Members from cyberattacks.

10

45.    Given its cybersecurity expertise, TruStage knew or should have known that its own products and associated services used to protect its systems containing highly sensitive financial and personal information belonging to downstream entities, including credit unions, and their customers, were not properly protected.

46.    TruStage breached its duty to exercise reasonable care to Plaitniff and the Class by failing to implement and maintain adequate cybersecurity safeguards for its own environment and related systems.

47.    The exposure of the Company's environment enabled or materially facilitated threat actors' ability to bypass network authentication controls and gain unauthorized access to TruStage's network.

48.    As a direct and foreseeable result of TruStage's negligent acts and omissions, unauthorized actors gained access to systems containing Plaintiff's and Class Member's members' Confidential Information, resulting in the Data Breach described herein.

49.    The Company's negligence was a substantial factor contributing to the compromise of TruStage's network and the resulting exposure of Plaintiffs' and Class Members' members' Confidential Information.

50.    As a direct and proximate result of the Company's negligence, Plaintiff and Class Members have suffered damages, including costs associated with investigating and responding to the Data Breach, remediation and mitigation efforts, breach-notification and member-protection expenses, and other losses resulting from the exposure of its members' Confidential Information.

## JURY TRIAL DEMAND

Plaintiff and Class Members demand a trial by jury of any and all issues in this action so triable as of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members respectfully request that the Court grant the following relief:

a. **Damages for negligence** against Defendant TruStage, in an amount to be proven at trial;

b. **Indemnification and/or contribution**, to the extent applicable, requiring Defendant to reimburse Plaintiff and the Class for losses caused by Defendant' conduct;

c. **Costs of litigation**, awarding the attorneys' fees and costs of Plaintiff and the Class, and the maximum prejudgment and post judgment interest allowed by law; and

d. **Any further relief** as the Court deems just and proper.

Dated: July 17, 2026
/s/ *Kara A. Elgersma*
Kara A. Elgersma
**WEXLER, BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450
Chicago, Illinois  60606
Telephone: (312) 346-2222
kae@wbe-llp.com


David L. Hecht
Lori G. Feldman
(Applications for admission in this Court or admission *pro hac vice* to be filed)
**HECHT PARTNERS LLP**
125 Park Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 851-6821
dhecht@hechtpartners.com
lfeldman@hechtpartners.com

Charles J. Nerko
Walter E. Swearingen
Neil P. Diskin
(Applications for admission in this Court or admission *pro hac vice* to be filed)

12

**NERKO PLLC**
1178 Broadway, 3rd Floor
New York, NY 10001
Telephone: (518) 363-9100
cnerko@nerko.com
wswearingen@nerko.com
ndiskin@nerko.com

*Attorneys for Plaintiff and the Proposed Class*