UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **In re TruStage Financial Group, Inc. Data Incident Litigation**<br><br>This Document Relates To: All Actions | Case No.: 3:26-cv-00644-WMC-AMB |

## JOINT STATUS REPORT

Pursuant to the Court's September 24, 2026, Order (Dkt. 21), which stayed these proceedings and directed the Parties to file joint status reports every 60 days, the Parties respectfully submit the following Joint Status Report. The Parties' positions are set forth separately below.

### I. Position of the Credit Union and Business Entity Plaintiffs (the "Commercial Entity Plaintiffs") Regarding Continuation of the Stay

The Commercial Entity Plaintiffs respectfully submit that no further extension of the stay is warranted. The Court previously afforded Defendant TruStage Financial Group ("TruStage") an opportunity to investigate the cybersecurity incident that disrupted its systems and the operations of the credit unions, businesses, and individuals that depend on its services. Although the Commercial Entity Plaintiffs recognize the importance of a thorough investigation and the safe restoration of affected systems, the continued suspension of this litigation—in particular, claims that have been and will be brought by the Commercial Entity Plaintiffs in a Consolidated Complaint—is neither justified nor equitable, particularly where the Commercial Entity Plaintiffs continue to suffer substantial operational disruptions and financial harm. More than four months have elapsed since TruStage identified the incident on July 11, 2026, yet the Commercial Entity Plaintiffs remain unable to access accounts and services essential to their businesses. The balance of equities therefore weighs decisively **against** any further delay.

Indeed, TruStage's own public disclosures confirm that the effects of the incident remain unresolved. As recently as November 16, 2026, TruStage acknowledged that certain services remained unavailable and that it was continuing to rebuild portions of its infrastructure. Its November 10, 2026, updates further confirmed that claims submission, processing, and payment functions remained only partially available, that substantial claims backlogs persisted, and that policy servicing and disbursement functions—including withdrawals, recurring payments, and surrenders—continued to experience disruptions. TruStage further acknowledged that manual processes, system dependencies, and ongoing testing and validation continued to delay restoration of services. *See* TruStage, *Information on TruStage's Systems Outage*, https://www.trustage.com/outage (updated Nov. 16, 2026).

These disruptions are not merely historical or speculative. The Commercial Entity Plaintiffs are credit unions and businesses whose ability to conduct ordinary business operations, administer financial products, access accounts, process transactions, and serve their customers and members continues to be impaired. The resulting harm is ongoing and cumulative. Each additional day of disruption threatens further financial losses, administrative burdens, and interference with the Commercial Entity Plaintiffs' business relationships. Unlike TruStage, which seeks additional time to complete an investigation within its control, the Commercial Entity Plaintiffs have no comparable ability to mitigate the ongoing unavailability of the accounts and services on which they depend.

The widespread consequences of TruStage's system failures have also been publicly documented. In a July 21, 2026, article, *American Banker* reported that TruStage's shutdown had interrupted services provided to credit unions nationwide and prevented members from accessing certain accounts, including retirement accounts. The report further described interruptions

affecting insurance claims, payment-protection products, and other financial services offered through credit union partners. *See* Carter Pape, *Credit Union Sues TruStage Over Cybersecurity Incident*, *American Banker* (July 21, 2026). The article also reported that TruStage represented to credit unions that it maintained regular data backups and tested its ability to recover critical business processes in a timely manner. The allegations concerning those representations remain disputed, but they underscore the importance of allowing the Commercial Entity Plaintiffs to investigate the circumstances surrounding the incident and the prolonged interruption of services.

Against this backdrop, TruStage cannot justify a further stay merely by asserting that its investigation is ongoing. The Supreme Court has recognized that the authority to stay proceedings must be exercised with due regard for the competing interests of the parties. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Where there is a fair possibility that a stay will cause injury to another party, the party seeking the stay must demonstrate a clear case of hardship or inequity. *Id.* at 255. The Supreme Court has likewise emphasized that the proponent of a stay bears the burden of establishing its necessity and that courts must consider the prejudice associated with delayed litigation. *Clinton v. Jones*, 520 U.S. 681, 706–08 (1997).

Here, the prejudice to the Commercial Entity Plaintiffs is concrete, substantial, and continuing. By contrast, the fact that TruStage's investigation remains incomplete does not, without more, establish that permitting litigation to proceed would materially interfere with its investigative or remediation efforts. TruStage has already had months to engage forensic professionals and vendor, assess the nature and scope of the incident, preserve relevant evidence, identify affected systems, and undertake restoration efforts. Indeed, TruStage publicly announced in July that it had engaged external cybersecurity experts to assist with containment, remediation, and recovery. *See* TruStage, *TruStage Provides Update on Cybersecurity Incident* (July 24,

2026), https://www.trustage.com/newsroom/2026-press-releases/cybersecurity-incident-update. The existence of continuing investigative or remediation work does not establish that all litigation activity must remain suspended until TruStage unilaterally determines that its work is complete.

Nor should the Commercial Entity Plaintiffs be required to await the conclusion of TruStage's internal investigation before pursuing their own discovery. TruStage's investigation necessarily serves its own operational, regulatory, and litigation interests. It is not a substitute for adversarial discovery into the causes of the incident, the adequacy of TruStage's cybersecurity safeguards, its business-continuity and disaster-recovery procedures, the circumstances surrounding the prolonged interruption of services, and the financial and operational injuries the Commercial Entity Plaintiffs have sustained. To continue the stay would perpetuate an information imbalance in which TruStage is permitted to investigate and develop its understanding of the incident while the Commercial Entity Plaintiffs are denied the opportunity to obtain relevant evidence and independently evaluate their claims.

The continued passage of time also threatens to prejudice the Commercial Entity Plaintiffs' ability to prosecute this action effectively. Witness recollections may fade, personnel may become unavailable, and electronic records relating to the incident and subsequent restoration efforts may become more difficult to identify and obtain. At the same time, the Commercial Entity Plaintiffs' damages continue to develop as account-access restrictions and service disruptions persist. Further delay would therefore impair not only the Commercial Entity Plaintiffs' ability to obtain timely relief but also potentially their ability to establish the full extent and causes of their injuries.

Moreover, the interests of judicial economy do not support an additional blanket stay. Permitting the litigation to proceed would not require TruStage to abandon its investigation or compromise its recovery efforts. Any legitimate concerns regarding particular notice and/or discovery obligations can be addressed through phased discovery, reasonable scheduling accommodations, and appropriate protective measures under Federal Rule of Civil Procedure 26. Such targeted measures would accommodate genuine investigative needs without depriving the Commercial Entity Plaintiffs of meaningful progress in prosecuting their claims.

Ultimately, the circumstances that may have justified the original stay cannot be evaluated in isolation from the substantial passage of time and the continuing injuries the Commercial Entity Plaintiffs have experienced. What may have been a reasonable temporary accommodation at the outset of a cybersecurity incident should not become an open-ended suspension of litigation while affected customers remain unable to access essential financial accounts and services. TruStage should not be permitted to control the pace of these proceedings by determining when its own investigation is sufficiently complete, particularly when the resulting delay falls most heavily on the entities already harmed by the incident.

Accordingly, the Commercial Entity Plaintiffs respectfully request that the Court decline to extend the existing stay and direct the parties to proceed with the establishment of an appropriate case-management schedule. To the extent the Court determines that any additional accommodation is necessary, the Commercial Entity Plaintiffs submit that such relief should be narrowly tailored, limited in duration, and supported by a particularized showing of why specific litigation activities would materially interfere with TruStage's remaining investigative efforts.

## II. Defendants TruStage Financial Group and Align Credit Union

For the reasons set forth below, Defendants TruStage and Align Credit Union ("Align") respectfully request a 60-day extension of the stay.[1] A brief continuation will preserve the Court's resources by ensuring that these consolidated proceedings advance on a complete factual record, rather than requiring the Court to adjudicate pleadings, motions, and discovery disputes that the results of TruStage's ongoing investigation may soon render moot.

### A. Each Plaintiff's Claims Depend on Facts That TruStage's Ongoing Investigation Has Not Yet Established.

Every complaint in this consolidated litigation arises from a single event: a data security incident that TruStage experienced in July 2026 (the "Incident"). The Individual Plaintiffs allege that the Incident compromised their personal information. Plaintiff Peixoto, for example, alleges "[u]pon information and belief" that "the Private Information compromised in the Data Breach included Plaintiff's and Class Members' names, contact information, dates of birth, Social Security numbers, and financial account information." Peixoto Compl. ¶ 2. The other Individual Plaintiffs make virtually identical allegations. Based on the theory that their "Private Information was compromised in the Data Breach," the Individual Plaintiffs assert claims for negligence, negligence per se, breach of implied contract, unjust enrichment, and related theories, and seek damages, restitution, credit monitoring, and injunctive relief. *See, e.g.*, Belly Compl. ¶¶ 85, 149–180; Peixoto Compl. ¶¶ 1–14, 176–222; Kroutter Compl. ¶¶ 82–118; Collette Compl. ¶¶ 11, 125–214.

The two Commercial Entity Plaintiffs base their claims on a similar, but slightly different theory. In their Amended Class Action Complaint, Plaintiffs Bessemer System Federal Credit

---

[1] As of the date of this filing, counsel has not appeared on behalf of any Defendant other than TruStage and Align.

Union and Surf Pediatrics and Medicine, P.C., allege that TruStage failed "to properly secure and safeguard [their] and other similarly situated credit unions, credit union members, and businesses' private and confidential information." Bessemer Am. Compl. ¶ 1. The Commercial Entity Plaintiffs seek to represent a class of "[a]ll credit unions (including credit union members) and businesses in the United States that provided Confidential Information to TruStage and were impacted by the Data Breach." *Id.* ¶ 35. The Commercial Entity Plaintiffs seek "to recover payments made for deficient services and to recoup any and all expenses incurred as a result of the Data Breach." *Id.* ¶ 10. As with the Individual Plaintiffs' claims, the two Commercial Entity Plaintiffs' claims rely on the assumption that *their* information and/or the information of *their* members was "impacted by the Data Breach." *Id.* ¶ 35. Indeed, the Commercial Entity Plaintiffs define their proposed class to include only those credit unions and businesses that "were impacted by the Data Breach." *Id.*

Moreover, the Commercial Entity Plaintiffs' pleaded injuries arise from the alleged exposure of "Confidential Information," not from service unavailability alone. *See id.* ¶¶ 1, 3, 9, 29. Their allegations rest on unauthorized actors gaining "access to systems containing" Confidential Information and "the resulting exposure" of that information. *Id.* ¶¶ 50–51. The damages sought follow the same theory: "breach-notification and member-protection expenses, and other losses resulting from the exposure of their members' and employees' Confidential Information." *Id.* ¶ 52; *see also id.* ¶¶ 9, 28–30 (alleging fraud-monitoring and remediation costs and ongoing identity-theft risks). Each of these injuries presupposes that Confidential Information was in fact exposed, and none can be measured—or even established—without knowing whether the Commercial Entity Plaintiffs' or their members' information was affected.

The Commercial Entity Plaintiffs' emphasis in this Joint Status Report on ongoing service disruptions does not change that analysis. The public outage updates and press coverage they cite describe TruStage's efforts to restore its systems and services; they say nothing about whose information, if anyone's, was exposed—the question on which the Commercial Entity Plaintiffs' pleaded claims and proposed class definition turn. *See* Bessemer Am. Compl. ¶ 35. Nor would lifting the stay restore a single account or service any sooner. And the reported representations regarding TruStage's data backups and recovery capabilities—which the Commercial Entity Plaintiffs themselves acknowledge "remain disputed"—go to the merits, not to whether a brief continuation is warranted. Those questions can be fully explored once the record is complete.

The common thread between the complaints of all Plaintiffs is the premise that a given Plaintiff's (or its members') information was compromised in the Incident. Yet TruStage has yet to determine whose information was subject to the Incident because its investigation is ongoing. Most relevantly, TruStage will need to determine the population of individuals whose information may have been affected by the Incident, the states in which those individuals reside, and what types of information may have been affected, so that it can ascertain to whom it must send notification letters pursuant to various state laws. Until TruStage completes that analysis and sends the requisite notification letters to individuals and/or businesses (if any) informing them that their information was subject to the Incident, Plaintiffs themselves have no way of knowing if their information was compromised. Indeed, Plaintiffs' allegations are, by their own terms, made largely "upon information and belief." *See, e.g.*, Peixoto Compl. ¶ 2; Blackmon Compl. ¶ 36 ("Upon information and belief, Plaintiff is a victim of the Data Breach.").[2]

[2] Plaintiff Blackmon further concedes that TruStage has not yet sent "direct notice of the Data Breach to the victims." Blackmon Compl. ¶ 31.

Until TruStage's investigation determines what data was potentially affected and to whom it belongs so that it can send corresponding notification letters, no one can say with any certainty whether any Plaintiff's information was affected by the Incident. That uncertainty is precisely why the Parties jointly sought a stay two months ago, "to permit TruStage to continue its investigation into the Incident and, crucially, determine to whom, if anyone, it will be required to send breach notice letters." Dkt. 19 at 5. As the Parties recognized, that determination "will have a material impact on the nature of and parties in this litigation." *Id.* at 6. The Court agreed, granting the Joint Motion, staying these proceedings, and ordering the Parties to submit joint status reports every 60 days. *See* Dkt. 21. Nothing has changed that would justify asking the Court to expend its resources on claims whose factual foundation remains unsettled.

### B. TruStage Has Made Substantial Progress and Expects to Present a Plan and Updated Timeline Within 60 Days.

TruStage's investigation has proceeded in stages and remains ongoing. As the Parties explained in their Joint Motion, TruStage required time to assess the Incident before it could determine whether, and to whom, notice letters must be sent. In the immediate aftermath of the Incident, TruStage devoted substantial time and resources to restoring its business operations and systems. Concurrently, TruStage retained third-party vendors to identify the data potentially affected by the Incident. That work is ongoing. TruStage is still narrowing the population of files that will be subject to review to determine whether notice is required and, if so, to whom, and that population has not yet been finalized. To expedite the process, TruStage intends to use automated tools to extract the relevant data from those files, followed by a manual quality-control review of a percentage of the documents.

The Commercial Entity Plaintiffs contend that, because TruStage announced in July 2026 that it had engaged external cybersecurity experts, its investigation should by now be complete.

That argument conflates two distinct undertakings. TruStage engaged those experts to contain the Incident, remediate its systems, and restore its operations. Determining what data was affected, to whom that data belongs, and whether notice is required is a separate task—one that necessarily follows, and cannot meaningfully proceed until TruStage has secured the affected environment and identified the files potentially at issue. The time the review requires reflects its scope and the accuracy that notification demands, not any lack of diligence. The Commercial Entity Plaintiffs offer only speculation in support of their assertion that TruStage's investigation should already be complete.

TruStage has not yet begun sending notice letters because, until the review is complete, TruStage cannot identify the recipients of any notice (if any) or develop a notice plan. TruStage therefore respectfully requests that the Court continue the current stay for an additional 60 days, through January 22, 2027. During that time, TruStage will work to finalize the review population and its review methodology, and it expects to provide the Court and Plaintiffs in the next Joint Status Report with its review plan and an updated, more concrete timeline for completing the review and issuing any required notifications. That information will allow the Court to manage the next phase of this litigation efficiently and with a clear view of its scope.

### C. Lifting the Stay Now Would Burden the Court with the Duplicative and Piecemeal Proceedings That Consolidation and the Stay Were Intended to Prevent.

Lifting the stay now would be inefficient, would defeat the stay's purpose, and would place unnecessary demands on the Court. Until notice letters issue, individuals and entities whose information may have been affected may not know they have potential claims, and additional actions may be filed *after* notice. That sequence is common in data incident litigation, where notification often prompts new filings by recipients who previously had no basis to believe their information was involved. For the same reasons, Plaintiffs in this action do not know whether their

information (or the information of their members) was in fact subject to the Incident. The scope of any notice—and thus the universe of potential plaintiffs, the composition of any putative classes, and the categories of data at issue—will remain unknown until TruStage completes its review.

Lifting the stay before then would force the Court to manage pleadings, class definitions, and discovery on an incomplete and shifting record. The Court could be asked to decide motions directed to complaints that may soon be superseded, to consolidate new actions midstream, and to address serial amendments and piecemeal discovery as new plaintiffs emerge. The result would be duplicative proceedings, potentially inconsistent rulings, and the repeated expenditure of judicial resources on the same issues—the very inefficiencies that consolidation and the stay were designed to avoid. A brief continuation, by contrast, will allow the litigation to proceed once notices have issued, when these Plaintiffs and any others will have a factual basis to believe their information was implicated, and the Court can address the claims once, on a complete record.

Those burdens would be especially acute in discovery. If the Commercial Entity Plaintiffs proceed alone while the Individual Plaintiffs' claims remain stayed, discovery would proceed on two uncoordinated tracks. Although the two groups' theories are not identical, they overlap substantially, and much of what TruStage produces to one group would have to be produced to the other. More significantly, to the extent discovery requests draw privilege, work-product, and other objections, as is often the case in these matters, resolving those disputes now with the Commercial Entity Plaintiffs would waste the resources of the Court. The Court would be required to resolve those disputes now with the Commercial Entity Plaintiffs, and again with the Individual Plaintiffs once the stay lifts, doubling the demands on its docket and risking inconsistent rulings on the same issues.

### D. The Individual Plaintiffs Do Not Oppose a 60-Day Continuation, and the Commercial Entity Plaintiffs' Proposal Would Needlessly Burden the Court.

On November 17, 2026, undersigned counsel for TruStage conferred with the four appointed interim lead Plaintiffs' counsel and advised them of the status of TruStage's data review and that it would need an additional 60 days for the reasons set out above. During that call, the Individual Plaintiffs advised that they do not oppose a 60-day continuation of the stay to permit TruStage's investigation to proceed.

The Commercial Entity Plaintiffs, by contrast, do not consent and instead wish to "move forward" by obtaining discovery and amending their complaint. That proposal is premature and wasteful of the Court's resources. Until TruStage's data review is complete, no party knows what data was affected, whose data it was, or whether any Commercial Entity Plaintiff's information—or its members' or customers' information—was involved at all. The same uncertainty affects other credit unions and businesses that may wish to bring similar claims: they, too, cannot yet know whether their own members or customers were affected, and many will learn that only through TruStage's notification process. A stay therefore serves the interests of all potential commercial claimants, allowing both the current Commercial Entity Plaintiffs and any others to assess the full scope of their claims on a complete record rather than piecemeal. Any amendment filed now would rest on incomplete facts and would likely require yet another amendment once the investigation concludes, requiring the Court to oversee serial rounds of pleadings and motion practice directed at allegations the facts may soon overtake. (Indeed, during the Parties' meet and confer call on November 17th, counsel for the Commercial Entity Plaintiffs indicated that they anticipate amending the complaint *multiple* times.)

Nor can discovery fill that gap. The Commercial Entity Plaintiffs would seek the very information TruStage's review is designed to generate, and diverting TruStage's resources to

discovery would only slow that review and delay the answers that every party—and the Court—needs. And discovery cannot be used to search for a claim that has not been adequately pleaded. Proceeding as the Commercial Entity Plaintiffs propose would impose substantial burden and expense on the Court and the Parties, whereas a brief 60-day continuation will ensure that any amended pleading rests on a complete factual record and that the Court need address it only once. Moreover, the Commercial Entity Plaintiffs have not indicated when, on whose behalf, or on what theories they would amend, leaving neither TruStage nor the Court any basis to assess whether an amendment would be anything other than futile.

### E. Phased Discovery and Case-Management Accommodations Would Not Cure the Inefficiencies of Lifting the Stay, and a Brief Continuation Creates No Information Imbalance.

The Commercial Entity Plaintiffs' proposal to address TruStage's concerns through phased discovery, scheduling accommodations, and protective orders under Federal Rule of Civil Procedure 26 does not cure the inefficiencies identified in Section D. Phasing would not eliminate parallel discovery tracks or duplicative privilege disputes; it would simply build them into the schedule. Nor can the Parties design a sensible discovery protocol before they know what data was affected, to whom it belongs, and which parties and putative classes will ultimately be before the Court. Adopting the Commercial Entity Plaintiffs' proposal would require the Court to construct a case-management framework now, only to rebuild it once notice issues.

Nor would a brief continuation create any meaningful "information imbalance." TruStage's review is directed at determining whether notice is required and, if so, to whom—and any required notifications will provide affected individuals and entities with the very information the Commercial Entity Plaintiffs say they lack. In the meantime, no party is litigating the merits, and TruStage is not obtaining any advantage in these proceedings.

In short, no procedural accommodation can substitute for the factual foundation that TruStage's review will supply. Phased discovery and Rule 26 protections presuppose a defined universe of parties, claims, and data; that universe does not yet exist. A brief continuation will allow the Court to establish a single, coherent case-management framework once notice has issued, rather than adopting an interim structure that will inevitably require revision as new plaintiffs and claims emerge.

### F. Commercial Entity Plaintiffs Have Identified No Prejudice or Timeliness Concern Arising from a Brief 60-Day Continuation.

Finally, the Commercial Entity Plaintiffs have not identified any prejudice that a 60-day continuation would cause, and none exists. The Individual Plaintiffs, who constitute the majority of Plaintiffs in this consolidated action, consent to the continuation. The Commercial Entity Plaintiffs oppose it but point to no concrete litigation harm: no evidence at risk of loss, no deadline that would lapse, and no relief that would be foreclosed in the interim. The operational disruptions they describe would not be remedied by lifting the stay now, and any damages they ultimately prove will remain recoverable after a 60-day continuation. A desire to "move forward" is a preference for speed, not a showing of prejudice.

The Commercial Entity Plaintiffs' speculation that witness recollections may fade or electronic records may become harder to obtain fares no better. TruStage is aware of, and is complying with, its preservation obligations. The Commercial Entity Plaintiffs, for their part, identify no witness, document, or category of evidence at risk. Abstract concerns of this kind exist in every stayed case; if they sufficed, no stay could ever issue. They cannot establish prejudice from a continuation of just 60 days.

The Commercial Entity Plaintiffs' reliance on *Landis v. North American Co.*, 299 U.S. 248 (1936), and *Clinton v. Jones*, 520 U.S. 681 (1997), is misplaced. *Landis* confirms that the power

to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." 299 U.S. at 254. That is precisely the power TruStage and Align ask the Court to exercise here. The Court has already weighed the competing interests and found a stay warranted. *See* Dkt. 21. The only question now is whether to continue that stay for a defined 60-day period, subject to further reporting. TruStage does not seek an indefinite stay, and it does not ask that the stay turn on its own unilateral judgment. It seeks a short continuation, at the end of which it will present a concrete review plan and timeline, and the Court—not TruStage—will decide whether any further continuation is warranted.

Nor does the requested continuation raise any timeliness concern. This litigation remains at its earliest stage: the Incident occurred in July 2026, TruStage has not issued notices, the Court entered the stay less than two months ago, and no scheduling order, responsive-pleading deadline, or discovery schedule has been set. Extending the stay through January 22, 2027, would therefore neither delay any pending deadline nor disrupt any established schedule. The continuation is also modest in duration and subject to the Court's ongoing oversight. Under the Court's September 24, 2026, Order, the Parties will report again in 60 days, at which time TruStage expects to present its review plan and a more concrete timeline for completing the review and issuing any required notifications. The Court will thus retain full control over the pace of this litigation and may revisit the stay at that time should circumstances warrant. Balanced against the absence of any identified

prejudice, the substantial efficiencies that a brief continuation will secure for the Court and the Parties weigh decisively in favor of extending the stay.

**III. Individual Plaintiffs**

As noted above, the Parties met on November 17, 2026, to discuss the status of TruStage's investigation and whether the stay should be lifted or continued for an additional 60 days. Pursuant to the information provided by TruStage's counsel concerning the current status of TruStage's investigation and the remaining investigatory work, the Individual Plaintiffs do not oppose continuing the stay for 60 days. Counsel for the Individual Plaintiffs understands that within 60 days, TruStage will be able to advise whether and when notice will be sent to individuals who were potentially impacted by the incident. The Individual Plaintiffs reserve the right to request that the Court lift the stay in fewer than 60 days should it become necessary.

Dated: November 23, 2026

Respectfully submitted,

*/s/ Lori G. Feldman*
Lori G. Feldman (*pro hac vice* to be filed)
**HECHT PARTNERS LLP**
125 Park Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 851-6821
lfeldman@hechtpartners.com

*/s/ Charles J. Nerko*
**NERKO PLLC**
1178 Broadway, 3rd Floor
New York, NY 10001
Telephone: (518) 363-9100
cnerko@nerko.com

*Temporary Lead Counsel*
*for the Commercial Entity Plaintiffs*

*/s/ Francis X. Nolan, IV*
Francis X. Nolan, IV
Alexander P. Fuchs (*pro hac vice*)

Alexander K. Bussey (*pro hac vice*)
**EVERSHEDS SUTHERLAND (US) LLP**
1114 Avenue of the Americas
The Grace Building, 40th Floor
New York, New York 10036
Telephone: (212) 389-5000
franknolan@eversheds-sutherland.com
alexfuchs@eversheds-sutherland.com
alexanderbussey@eversheds-sutherland.com

Ian N. Jones (*pro hac vice*)
Claire Scavone (*pro hac vice*)
**EVERSHEDS SUTHERLAND (US) LLP**
600 Peachtree Street, NE, Suite 5200
Atlanta, Georgia 30308
Telephone: (404) 853-8000
ianjones@eversheds-sutherland.com
clairescavone@eversheds-sutherland.com

Gabriel A. Kohan (*pro hac vice*)
**EVERSHEDS SUTHERLAND (US) LLP**
700 Sixth Street, N.W., Suite 700
Washington, DC 20001-3980
Telephone: (202) 383-0337
Facsimile: (202) 637-3593
gabrielkohan@eversheds-sutherland.com

*/s/ Todd G. Smith*
Todd G. Smith
Nathan John Watson
**Godfrey & Kahn, S.C.**
One Main Street, Suite 500
Madison, WI 53703
Telephone: (608) 257-3911
Facsimile: (608) 257-0609

Zachary Robert Willenbrink
**Godfrey & Kahn, S.C.**
833 East Michigan Street
Milwaukee, WI 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Counsel for Defendant*
*TruStage Financial Group, Inc.*

*/s/ Christopher J. Valente*
Christopher J. Valente
**K&L Gates LLP**
One Congress Street, Suite 2900
Boston, MA 02114
Tel.: (617) 261-3100
E-mail: christopher.valente@klgates.com

*Attorney for Defendant Align Credit Union*

*/s/ Nickolas J. Hagman*
Nickolas J. Hagman
**CAFFERTY CLOBES**
**MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: 312.782.4880
nhagman@caffertyclobes.com

*/s/ Philip J. Krzeski*
Philip J. Krzeski
Bryan L. Bleichner*
**CHESTNUT CAMBRONNE PA**
100 Washington Ave. S, Suite 1700
Minneapolis, Minnesota 55401
Telephone: (612) 339-7300
pkrzeski@chestnutcambronne.com
bbleichner@chestnutcambronne.com

*Temporary Interim Counsel for the Individual Plaintiffs*